**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

            v.

DIEGO A. LIGHTFOOT, AKA Jusif
Tawfiq,
            *Defendant-Appellant.*

No. 09-30063

D.C. No.
3:04-CR-00098-
JKS-1

OPINION

Appeal from the United States District Court
for the District of Alaska
James K. Singleton, Senior District Judge, Presiding

Argued and Submitted
November 2, 2010—Seattle, Washington

Filed November 30, 2010

Before: Betty B. Fletcher, Ferdinand F. Fernandez, and
Jay S. Bybee, Circuit Judges.

Opinion by Judge Fernandez

## COUNSEL

Meredith A. Ahearn, Hagans, Ahearn & Webb, Anchorage, Alaska, for the defendant-appellant.

Jo Ann Farrington, Office of the United States Attorney, Anchorage, Alaska, for the plaintiff-appellee.

## OPINION

FERNANDEZ, Circuit Judge:

Diego Lightfoot appeals the district court's denial of his motion to modify his sentence. 18 U.S.C. § 3582(c)(2). We affirm.

BACKGROUND

Pursuant to a plea agreement signed on November 1, 2004, Lightfoot was convicted on January 13, 2005, of three offenses: felon in possession of a firearm and ammunition, 18 U.S.C. § 922(g)(1); possession of a controlled substance — crack cocaine — with intent to distribute, 21 U.S.C. § 841(a)(1), (b)(1)(B); and use of firearm in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c)(1)(A), (D). Based on a total offense level of 23 and a criminal history category of IV, the range under the Sentencing Guidelines ("Guidelines") was established at 130 to 147 months. The district court sentenced Lightfoot to 130 months imprisonment and five years of supervised release.

The Guidelines for crack cocaine violations were amended after Lightfoot was sentenced. Amendment 706 to the Guidelines (hereafter "the Amendment") authorizes reductions for sentences based on crack cocaine violations that were imposed before November 1, 2007. *See United States v. Chaney*, 581 F.3d 1123, 1125 (9th Cir. 2009); USSG App. C, amend. 706. The Sentencing Commission promulgated the Amendment in response to the one hundred to one sentencing disparity between offenses involving crack cocaine and those involving powder cocaine. *United States v. Leniear*, 574 F.3d 668, 672-73 (9th Cir. 2009). The Amendment reduced the disparity by adjusting the base offense levels assigned to various quantities of crack cocaine downward by two points. USSG § 2D1.1. It was declared to be retroactive. *Id.* § 1B1.10(c).

In light of the Amendment, Lightfoot filed an 18 U.S.C. § 3582(c)(2) motion with the district court to reduce his sentence. The government asserted that Lightfoot remained a danger to the community and urged the district court to use its discretion to refuse his request.

The court found that Lightfoot was eligible for a sentence reduction under § 3582(c)(2) because "the guideline range

applicable to the Defendant has been reduced." The court recognized its obligation to weigh the § 3553(a) factors and to consider the nature and seriousness of the danger to the community that may be posed as a result of any reduction,[1] but did not see any reason to hold a hearing with Lightfoot present. It then decided that a reduction was not warranted. This appeal followed.

## JURISDICTION AND STANDARDS OF REVIEW

The district court had jurisdiction pursuant to 18 U.S.C. §§ 3231, 3582(c)(2). We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

Before we can address the merits of Lightfoot's contention that the district court wrongfully decided his § 3582(c)(2) motion, we must determine whether he waived his right to appeal that decision in the first place. *See United States v. Vences*, 169 F.3d 611, 613 (9th Cir. 1999). We consider de novo whether, pursuant to a plea agreement, a defendant has waived his appeal rights. *See United States v. Speelman*, 431 F.3d 1226, 1229 (9th Cir. 2005).

We review § 3582(c)(2) denials of reduction of sentencing for abuse of discretion. *Chaney*, 581 F.3d at 1125. "A district court may abuse its discretion if it does not apply the correct law or if it rests its decision on a clearly erroneous finding of material fact." *Id.* (internal quotation marks omitted).

## DISCUSSION

As already noted, we must first decide whether we should hear this appeal at all, and only then will we decide its merits.

---

[1]*See* USSG § 1B1.10 comment. (n. 1(B)).

I.   *Waiver of Appeal Rights*

In the plea agreement entered into on November 1, 2004, Lightfoot waived a number of rights. He agreed to waive "his right to appeal his conviction." That is not in question here. However, he also agreed that:

> as consideration for the government's commitments under this plea agreement, and if the court accepts this plea agreement and imposes a sentence no greater than the maximum statutory penalties available for the offense of conviction, including any forfeiture under this plea agreement, he will knowingly and voluntarily waive his right, contained in 18 U.S.C. § 3742, to appeal the sentence — including any forfeiture or conditions of supervised release imposed. Furthermore, the defendant also knowingly and voluntarily agrees to waive his right to collaterally attack his conviction and/or sentence — including any forfeiture, whether civil or criminal, administrative or judicial or conditions of supervised release imposed.

He reiterated that when he further agreed:

> I also knowingly and voluntarily agree to waive my right under 18 U.S.C. § 3742 to appeal any aspect of the sentence imposed in this case, if the court accepts this agreement and imposes a sentence no greater than the statutory maximums available for this offense. Furthermore, I knowingly and voluntarily waive my right to collaterally attack any aspect of my conviction or sentence, except for a challenge based upon ineffective assistance of counsel . . . which affected either my guilty plea or the sentence imposed by the court.

There is no claim before us that the waiver was ineffective as to his initial sentence. What is disputed, however, is whether

it encompasses the present modification proceeding. As we will explain, it does not.

No doubt plea agreements are contractual in nature,[2] and, as is typical in contract cases, if the terms are clear and unambiguous, we will not look further.[3] If they are not that clear, we look further,[4] and if they still remain ambiguous, we construe the ambiguity against the government.[5]

[1] When the provision at hand was drafted and agreed to, we think it was clear enough regarding the proceeding then in progress. Lightfoot's sentence was to become final at the time and was not to be directly or collaterally attacked.[6] That, however, does not answer the issue before us because Lightfoot has not sought to appeal or collaterally attack that sentence; he seeks only to challenge the district court's failure to impose a different sentence in light of the change in the Guidelines.

[2] No doubt a decision pursuant to § 3582(c)(2) is a discretionary decision separate from the original sentencing[7] and presents the district court with different considerations, but that does not quite answer the question at hand. Nevertheless, it is apparent that the parties never even contemplated that

---

[2]*United States v. Franklin*, 603 F.3d 652, 657 (9th Cir. 2010).

[3]*United States v. Clark*, 218 F.3d 1092, 1095 (9th Cir. 2000).

[4]*See Franklin*, 603 F.3d at 657; *Clark*, 218 F.3d at 1095.

[5]*See United States v. Joyce*, 357 F.3d 921, 923 (9th Cir. 2004); *United States v. Anglin*, 215 F.3d 1064, 1067 (9th Cir. 2000).

[6]Plea agreements, of course, are not always so clear. *Compare Joyce*, 357 F.3d at 924 (waiver of right to appeal sentence includes supervised release), *with United States v. Pruitt*, 32 F.3d 431, 433 (9th Cir. 1994) (waiver of appeal rights does not waive collateral review rights).

[7]*See United States v. Colson*, 573 F.3d 915, 916 (9th Cir. 2009); *see also United States v. Woods*, 581 F.3d 531, 536 (7th Cir. 2009) (district court had jurisdiction despite a collateral attack waiver); *Leniear*, 574 F.3d at 672 (district court had jurisdiction despite a sentence appeal waiver).

there might be one of those relatively rare retroactive amendments to the Guidelines,[8] which would bring a new consideration before the district court; one that could present a new array of facts and call for a new exercise of discretion.[9] Had they done so, we have little doubt that waiver of an appeal of a § 3582(c)(2) decision would have been either expressly included or expressly excluded.

**[3]** In other words, we agree with the decision of the Fifth Circuit Court of Appeals that a similarly broad waiver at the time of a plea agreement did not waive the right to appeal a § 3582(c)(2) decision. *See United States v. Cooley*, 590 F.3d 293, 296-97 (5th Cir. 2009). As the court opined:

> [Section] 3582(c)(2) motions "do not contest" but rather "bring to the court's attention changes in the guidelines that allow for a sentence reduction." Indeed "the defendants could not contest the district court's original sentence of imprisonment through § 3582(c)(2) proceedings because § 3582(c)(2) provides no avenue through which to attack the original sentence."

*Id.* at 297 (footnote references omitted). The court continued, "a motion for sentence modification under 18 U.S.C. § 3582(c)(2) is not properly considered an 'appeal' or 'collateral proceeding' under the terms of a general waiver of appeal . . . ." *Id.* Certainly, it can reasonably be argued that the plea agreement at hand indicated that Lightfoot was waiving the right to appeal "any aspect of the sentence imposed in this case" and this later proceeding is an aspect of what his sen-

---

[8]*See United States v. Rudolph*, 190 F.3d 720, 724 (6th Cir. 1999). A comparison of the amendments listed in USSG § 1B1.10(c) and the total amendments adopted through November 1, 2008, indicates that of 725 adopted amendments only twenty-seven had been made retroactive — that is a mere 3.72 percent.

[9]*See Colson*, 573 F.3d at 916.

tence is now, but, again, we are left with an ambiguity regarding whether the agreement provision simply refers to the sentence to be imposed in 2005, or also refers to a possible change in that sentence at some later date — a change that would not be possible but for § 3582(c)(2). Thus, that phraseology in the agreement does not change our conclusion, and we agree with Lightfoot that we should hear his appeal.

## II. *The Merits*

**[4]** The question that remains is whether the district court abused its discretion when it declined to alter Lightfoot's sentence. Of course, full reconsideration and alteration of the original sentence was not the purpose of the § 3582(c)(2) proceeding.[10] The purpose was simply to consider whether Lightfoot should have the benefit of the reduced guideline range.

As we have said:

> By its plain terms, § 3582(c)(2) requires that the district court: (1) determine whether the defendant was "sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o)"; (2) consider[ ] the factors set forth in section 3553(a) to the extent that they are applicable"; and (3) determine whether "a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3552 (c)(2). There is simply no other requirement to be found in the plain text of the statute.

---

[10]*See United States v. Hicks*, 472 F.3d 1167, 1169 (9th Cir. 2007) (generally district courts cannot alter sentences); *id.* at 1171 (§ 3582(c)(2) proceedings are not "full re-sentencings"); *see also Woods*, 581 F.3d at 538 (district courts in § 3582(c)(2) proceedings "cannot make findings inconsistent with that of the original sentencing court").

*Chaney*, 581 F.3d at 1126. However, in making its determination, the court "shall consider the nature and seriousness of the danger to any person or the community that may be posed by a reduction in the defendant's term of imprisonment"[11] and "may consider post-sentencing conduct of the defendant that occurred after imposition of the original term of imprisonment."[12] The district court did exactly that, and declared that Lightfoot's behavior "has done nothing to alleviate the Court's concern" that he is a danger to the community, that the original sentence "was appropriate," and that it remains so. Here is what the court confronted: a record including insolence to custodial staff, fighting, threatening a staff member, threatening bodily harm, and refusing to work. For the most part, Lightfoot did not deny this behavior, but sought to shrug it off or excuse it; he suggested that "[h]is prison behavior is predictable." Well, so the district court believed, but that hardly boded well for the public were Lightfoot to be released early.

**[5]** We are unable to say that the district court abused its discretion.[13]

## CONCLUSION

This appeal is properly before us, despite Lightfoot's plea agreement. However, on this record the district court had every reason to be concerned that Lightfoot's prior behavior would become renascent upon his release from prison, and the court did not abuse its discretion when it refused to expedite

---

[11]USSG § 1B1.10, comment. 1(B)(ii).

[12]USSG § 1B1.10, comment. 1(B)(iii).

[13]Lightfoot complains that the district court went forward without allowing him to put in a personal appearance. But the law does not require the district court to allow that. *See* Fed. R. Crim. P. 43(b)(4); *see also Dillon v. United States*, ___ U.S. ___, ___, 130 S. Ct. 2683, 2692, 177 L. Ed. 2d 271 (2010). We see no abuse of discretion in the district court's decision to proceed without him.

imposition of Lightfoot upon society by reducing his earlier sentence.

AFFIRMED.