# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 23-246


**STATE OF LOUISIANA**

**VERSUS**

**TORI LYNETTE BROUSSARD**


**\*\*\*\*\*\*\*\*\*\***


APPLICATION FOR SUPERVISORY WRIT FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 10381-20
HONORABLE CLAYTON DAVIS, DISTRICT JUDGE
(HONORABLE DERRICK D. KEE, FORMERLY PRESIDING)


**\*\*\*\*\*\*\*\*\*\***


## CHARLES G. FITZGERALD
## JUDGE


**\*\*\*\*\*\*\*\*\*\***


Court composed of Jonathan W. Perry, Charles G. Fitzgerald, and Wilbur L. Stiles, Judges.


**WRIT GRANTED AND MADE PEREMPTORY IN PART;
WRIT DENIED IN PART.**

**Stephen C. Dwight**
**District Attorney,**
**Fourteenth Judicial District**
**David S. Pipes**
**Assistant District Attorney**
**901 Lakeshore Drive, Suite 800**
**Lake Charles, Louisiana 70601**
**(337) 437-3400**
      **Counsel for Applicant,**
         **State of Louisiana**

**Adam P. Johnson**
**The Johnson Firm**
**Post Office Box 849**
**Lake Charles, Louisiana 70601**
**(337) 433-1414**
      **Counsel for Defendant-Respondent,**
         **Tori Lynette Broussard**

**Todd S. Clemons**
**Todd Clemons & Associates**
**1740 Ryan Street**
**Lake Charles, Louisiana 70601**
**(337) 477-0000**
      **Counsel for Defendant-Respondent,**
         **Tori Lynette Broussard**

**FITZGERALD, Judge.**

Defendant, Tori Lynette Broussard, is charged with two counts of first degree murder. The State of Louisiana now seeks supervisory review of the trial court's judgment of January 4, 2023, granting Defendant's pre-trial motion to suppress.

## PROCEDURAL HISTORY

This is not the first time that this case has been before this court. In *State v. Broussard*, 21-622 (La.App. 3 Cir. 12/6/22) (unpublished opinion), a different panel exercised its supervisory jurisdiction and affirmed the suppression of Defendant's second police statement; that interview occurred on July 15, 2020. The panel then remanded the case to the trial court to determine two things. First, whether the suppressed second statement was voluntary: if so, the statement could be used by the State as impeachment evidence during Defendant's case-in-chief. And second, whether the search warrants for Defendant's residence, cell phone, GPS data, and day planner were valid once the information derived from the second statement was removed in light of the independent source and inevitable discovery doctrines.

The remand hearing was held on January 4, 2023. The trial court ruled from the bench, finding that Defendant's second statement was involuntary and that the warrant affidavits did not establish probable cause without the information from the suppressed statement. As to the State's many warrants, the trial court also found that the State failed to meet its burden of proving either inevitable discovery or independent source. Three weeks later, the trial court issued written reasons.

In response, the State filed the writ application now before us, urging two assignments of error:

1) Whether the Trial Court erred in concluding that the suppressed statement of [Defendant] was involuntary for purposes of use as impeachment evidence.

2) Whether the Trial Court abused its discretion in suppressing the State's evidence, finding there was no independent source for the evidence other than a suppressed statement and that it would not have been inevitably discovered.

Most recently, on April 30, 2024, this court granted the State's writ application for the purpose of deciding the matter on the merits. To this end, the parties were given additional time to supplement their briefs, and oral argument was held on June 18, 2024.

## LAW AND ANALYSIS

In *State v. Lang*, 19-586, p. 5 (La.App. 4 Cir. 7/22/19), 276 So.3d 558, 562, the fourth circuit addressed the standard of review for a motion to suppress:

> When reviewing motions to suppress, "appellate courts review trial court rulings under a deferential standard with regard to factual and other trial determinations, while legal findings are subject to a *de novo* standard of review." *State v. Wells*, 2008-2262, p. 4 (La. 7/6/10), 45 So.3d 577, 580. The proper standard of review for a motion to suppress is review for abuse of discretion. *Id*. A district court necessarily abuses its discretion when its ruling is based on an erroneous application of law. *State v. Hampton*, 2015-1222, p. 17 (La.App. 4 Cir. 12/23/15), 183 So.3d 769, 779 (citing *State v. Franklin*, 2013-1489, p. 12 (La.App. 4 Cir. 6/11/14), 147 So.3d 231, 240).

### *First Assignment of Error*

The State contends that Defendant's suppressed statement was voluntarily given.

The voluntariness of a police statement was at issue in *State v. Turner*, 16-1841 (La. 12/5/18), 263 So.3d 337, *cert. denied*, ___ U.S. ___, 140 S.Ct. 555 (2019). In that case, the Louisiana Supreme Court explained: "When deciding whether a statement is knowing and voluntary, a court considers the totality of circumstances in which it was made . . . . The question in each case is whether, under the particular facts and circumstances, the defendant's will was overborne at the time[.]" *Id*. at 399. In other words, "For a confession to be admissible, the state must show that it

2

was freely and voluntarily given without influence of fear, duress, intimidation, menace, threats, inducements, or promises." *State v. Brown*, 16-998, p. 50 (La. 1/28/22), 347 So.3d 745, 789, *cert. denied*, ___ U.S. ___, 143 S.Ct. 886 (2023).

Here, in support of its finding that Defendant's statement was involuntary, the trial court remarked as follows in its written reasons:

> As previously indicated by the October 19, 2021 ruling granting the defendant's motion to suppress, [Defendant] was contacted in the early morning hours, 12 hours . . . [after] her invocation of her right to counsel; presented with an uniformed officer claiming to escort her to the station; separated from her children; placed in an interrogation room and made to wait for over an hour for questioning; she was not free to leave; she was not [M]irandized; and she was arrested at the conclusion of the interview. She specifically asked if she needed counsel and was advised she did not. Here, the violation in this case involving Defendant's right to counsel was not a prophylactic technical violation of Miranda, but a full-on constitutional violation requiring the suppression of the statement as involuntary. For those reasons, and the totality of circumstances surrounding the custodial interrogation, the court reiterates that the statement given by [Defendant] was coercive, involuntary in nature, and must be suppressed in its entirety, including for the purposes of impeachment if she elects to testify at trial.

Based on the above, the State argues that the trial court misapplied the law. We agree: the trial court applied the legal analysis for determining whether an interview amounts to a custodial interrogation, as opposed to the analysis for determining the voluntariness of a police statement. *Compare Howes v. Fields*, 565 U.S. 499, 132 S.Ct. 1181 (2012), *with State v. Turner*, 263 So.3d 337. And because this legal error affected the trial court's analysis of the facts, we now review this assignment de novo.

To this end, there is nothing in the record showing that Defendant's statement was involuntary. None of the police officers displayed aggressive, menacing, or threatening body language. None of the officers shouted at or threatened Defendant. And none of the officers promised Defendant anything in exchange for her statement. In fact, the most pressure the officers placed on Defendant was moral in

3

nature: they repeatedly told her that they needed her help to find her husband, Neil Broussard, and the child he had kidnapped.

In conclusion, Defendant's statement of July 15, 2020, was voluntarily given, and this means that the statement can be used by the State as impeachment evidence if Defendant testifies at trial.

***Second Assignment of Error***

On remand, the trial court was also asked to determine whether there was probable cause for the State's search warrants pertaining to Defendant's residence, cell phone, GPS data, and day planner, considering the independent source and inevitable discovery doctrines. *State v. Broussard*, 21-622.  Following the remand hearing, the trial court suppressed the evidence called for by these warrants, finding a lack of probable cause and finding that the exceptions to the exclusionary rule were not proven by the State.  The State's second assignment seeks review of this ruling.

Now to the applicable law.  Once the defense has established a flaw in a search warrant, the burden of proof shifts to the state to prove an exception to the exclusionary rule. *State v. Folse*, 18-1518 (La. 6/26/19), 284 So.3d 627.  The independent source doctrine was addressed in *United States v. Hassan*, 83 F.3d 693 (5th Cir. 1996).  There, the Fifth Circuit explained:

> The district court must perform a two-part analysis to determine whether the independent source doctrine applies: (1) does the warrant affidavit, when purged of tainted information gained through the initial illegal entry, contain sufficient remaining facts to constitute probable cause ("probable cause"); and (2) did the illegal search affect or motivate the officers' decision to procure the search warrant ("effect of the illegal entry"). *See* [*United States v.*] *Restrepo*, 966 F.2d [964] at 966 [(5th Cir.1992), *cert. denied*, 506 U.S. 1049, 113 S.Ct. 968 (1993)]. This Court has addressed the proper standard of review in assessing each prong.  The probable cause prong involves a question of law that we review de novo. *Id*. at 971; *see United States v. Phillips*, 727 F.2d 392, 394–95 (5th Cir.1984) (concluding that a reviewing court may independently consider the sufficiency of the evidence in examining the district court's determination of probable cause).  In contrast, the

4

"effect of the illegal entry" prong involves a factual determination, *Restrepo*, 966 F.2d at 972, that should be reviewed under the clearly erroneous standard. *See United States v. Andrews*, 22 F.3d 1328, 1333 (5th Cir.), *cert. denied*, 513 U.S. 941, 115 S.Ct. 346, 130 L.Ed.2d 302 (1994) (concluding that a district court's factual findings on a motion to suppress should be reviewed only for clear error).

*Id*. at 697 (footnote omitted).

The inevitable discovery doctrine, on the other hand, was at issue in *State v. Lee*, 05-2098 (La. 1/16/08), 976 So.2d 109, *cert. denied*, 555 U.S. 824, 129 S.Ct. 143 (2008). In that case, the Louisiana Supreme Court provided the following statement of law:

> One of the theories courts use in addressing "fruit of the poisonous tree" issues is the inevitable discovery rule. The inevitable discovery doctrine "is in reality an extrapolation from the independent source doctrine: Because the tainted evidence would be admissible if in fact discovered through an independent source, it should be admissible if it inevitably would have been discovered." *Murray v. United States*, 487 U.S. 533, 539, 108 S.Ct. 2529, 2534, 101 L.Ed.2d 472 (1988). A functional similarity exists between the independent source and inevitable discovery doctrines because both seek to avoid excluding evidence the police "would have obtained . . . if no misconduct had taken place." *Nix v. Williams*, 467 U.S. 431, 444, 104 S.Ct. 2501, 2509, 81 L.Ed.2d 377 (1984). The State therefore bears the burden of proving by a preponderance of the evidence that "the information ultimately or inevitably would have been discovered by lawful means. . . ." *Id*.; *State v. Vigne*, 01-2940 (La.6/21/02), 820 So.2d 533, 539. Application of the inevitable discovery doctrine thus "involves no speculative elements but focuses on demonstrated historical facts capable of ready verification or impeachment. . . ." *Nix v. Williams*, 467 U.S. at 444, 104 S.Ct. at 2509 n. 5; *State v. Vigne*, 820 So.2d at 539.

*Id*. at 127.

We now turn our attention to the specific warrants sought by the Calcasieu Parish Sheriff's Office (CPSO).

Warrant CPSO-2020-6782, July 15, 2020, at 12:22 p.m.

The trial court cited this warrant number in suppressing the physical evidence seized from Defendant's residence. But in our view, the trial court abused its discretion in suppressing this evidence. In our view, the warrant affidavit, when

purged of the information derived from Defendant's July 15, 2020 interview, contains sufficient independent facts to establish probable cause. The discussion below summarized these additional facts.

At 12:22 p.m. on July 15, 2020, Detective Michael Miller, of the CPSO, signed an "Affidavit for Search Warrant" in reference to two counts of first degree murder, one count of attempted first degree murder, and one count of second degree kidnapping. The warrant application sought permission to search the single-family residence belonging to Defendant and her husband, Neil Broussard. The residence is located at 931 North Lyons Street in Lake Charles, Louisiana.

According to the warrant affidavit, on July 15, 2020, at 3:47 a.m., Catherine Hidalgo called 911 from 2429 Duraso Drive in Westlake, Louisiana. This was her home. Catherine reported that her daughter Kyla Hidalgo had been raped by Neil Broussard, and Catherine believed Neil Broussard was outside her home. Next, Catherine reported that Neil Broussard was inside her home. She then began pleading with him to not kill her children. Catherine repeatedly screamed and asked the dispatcher for help. Shortly thereafter, Catherine reported that she would not make it much longer and that "he took my baby."

The warrant affidavit then reflects that law enforcement arrived at Catherine's home within ten minutes of the 911 call. Upon arrival, CPSO deputies found Catherine, Kyla, and Kaleb Charlton, who was Kyla's boyfriend, inside the residence. All three had multiple gunshot wounds. The deputies believed that Catherine's fourteen-year-old daughter, K.H.H., was also inside the home, but they were unable to find her. Kyla and Kaleb died at the scene. As to Catherine, an ambulance transported her to the hospital for emergency surgery. While at the hospital, Catherine asked the accompanying deputies if her car (a black 2017

6

Hyundai Elantra) was still in her carport. Deputies then verified that her car was missing.

The warrant affidavit then provides that a few hours later, at 7:01 a.m. on July 15, 2020, K.H.H. was found in Beauregard Parish. CPSO detectives retrieved K.H.H. and transported her to the Children's Advocacy Center in Calcasieu Parish.

And one hour after that, according to the affidavit, someone identifying herself as a night clerk at the Holiday Inn on Holly Hill Road in Lake Charles telephoned CPSO Warrants Sergeant Leonard Gaddy. The night clerk said that she had known Neil Broussard for over six years, that he showed up the day before (on January 14), that he asked her for a favor, that she agreed, that she drove him to the Quality Inn Suites on Lakeshore Drive, and that she rented a room for him in her name. She also stated that Neil Broussard had seemed depressed.

In response, CPSO Digital Forensic Unit Detective Jerod Abshire contacted the manager of the Quality Inn Suites, and the manager informed him the hotel had a DVR video surveillance system.

Next, according to the affidavit, at 8:47 a.m. on July 15, 2020, CPSO detectives watched the forensic interview of K.H.H. by the Children's Advocacy Center. During the interview, K.H.H. explained that she saw someone in her backyard shortly before Neil Broussard entered the home through the back door. As he entered the home, K.H.H. saw her mother walking out of a nearby bathroom. Neil Broussard, in turn, told K.H.H. to stay down. He then shot Catherine, Kyla, and Kaleb with a black pistol. Next, Neil Broussard told K.H.H. to get into her mother's car, and he drove them away from the crime scene. Neil Broussard ultimately drove K.H.H. to a wooded area, where he stopped and told her to get out of the car. Once Neil Broussard drove away, K.H.H. walked until she found someone.

7

According to the warrant affidavit, at 9:20 that same morning, CPSO officers found Catherine Hidalgo's stolen vehicle parked in a wooded area south of McFatter Road in Ragley, Louisiana.

In addition, the warrant affidavit called for various items to be seized from the Broussard residence, including:

> [F]irearms, bodily fluids, blood evidence, clothing, digital evidence (such as thumb drives, hard drives, sim cards, flash drives, televisions, gaming devices, computers, etc.), cell phones, handwritten notes and/or ledgers, receipts, identification cards, narcotics, narcotics equipment, other intoxicating agents, mail addressed to Neil Broussard, U.S. Currency, etc.

Put simply, the facts summarized above established probable cause. Those facts create a reasonable belief that Neil Broussard committed the offenses and lived at the address stated in the warrant. Further, the specific items called for in the warrant could reasonably be found at the subject address. And those items—other than United States cash currency and drug items—could be evidence of Neil Broussard's crimes or provide information about his whereabouts. Hence, the warrant application established probable cause to search 931 North Lyons Street and seize evidence of Neil Broussard's alleged crimes or his whereabouts.

One more thing: Defendant's second statement—the suppressed statement— was given merely hours after the murders. At the time of the interview, Defendant's husband had been on the lam for five days, and there was tremendous urgency in locating him. In our view, this shows that the suppressed statement did not motivate or affect the officer's decision to obtain this warrant.

In conclusion, except for any cash issued by the United States Treasury or any drug evidence, the trial court abused its discretion in failing to apply the independent source doctrine to warrant number CPSO-2020-6782 and in suppressing the physical evidence seized pursuant to this warrant.

<u>Warrant CPSO-2020-6786, July 15, 2020, 3:08 p.m.</u>

The trial court did not specifically list this warrant number in suppressing the information pertaining to Defendant's cell phone and the GPS data for this phone. Yet this warrant is relevant to both of those things.

In this warrant, the CPSO sought to obtain AT&T phone records for cell number (337) 936-9225 from June 1 through July 15, 2020. The trial court, in turn, suppressed the information that was ultimately seized. Based on our review of the warrant application, the independent source doctrine is not applicable: nothing in the warrant affidavit, other than information derived from the suppressed statement, reflects how the phone number is related to the case. On the other hand, the inevitable discovery doctrine is applicable.

To this end, at both suppression hearings—without considering Defendant's suppressed statement—the State introduced evidence showing that the CPSO regularly used that number to communicate with Defendant in her capacity as an investigator for the Public Defender's Office. The CPSO used that phone number to contact Defendant about this case.

In addition, several days before the murders, Catherine Hidalgo gave the CPSO a copy of Google Hangouts messages between Defendant and Neil Broussard. The messages show that Defendant was helping Neil Broussard evade capture. And the messages authored by Defendant were transmitted using phone number (337) 936-9225.

There is more. The CPSO also obtained a surveillance video showing Defendant meeting with Neil Broussard on the evening before the murders. Yet earlier that same day (July 14, 2020), during Defendant's initial interview with

police—which was not suppressed—she denied knowing anything about her husband's whereabouts.

The State also adduced video evidence from the morning of the murders. That evidence shows Defendant driving away from Quality Inn Suites with her husband in the passenger seat. GPS data for Neil Broussard's cell phone and images of a car matching the description of the one being driven by Defendant that morning were also admitted in evidence.

The record further shows that the CPSO sought warrants for each of its searches and seizures even when warrants were arguably unnecessary. For example, the CPSO obtained Defendant's consent for searches of her phone and her residence.

But even still, given the evidence summarized above, it is unequivocal that investigators would have inevitably discovered by lawful means the phone records and GPS data derived from warrant number CPSO-2020-6786.

Thus, the trial court abused its discretion by suppressing the phone records and GPS data seized pursuant to warrant number CPSO-2020-6786.

Warrant CPSO-2020-6793, July 15, 2020, 7:37 p.m.

Unlike our previous discussion, the trial court did specifically cite this warrant number in suppressing information obtained from Defendant's cell phone. The warrant affidavit sought permission to search Defendant's black Samsung S9 cell phone for evidence of two counts of first degree murder, one count of attempted first degree murder, and one count of second degree kidnapping.

And here, even expunging the information derived from Defendant's suppressed interview, the warrant affidavit establishes the requisite probable cause. The affidavit shows that Neil Broussard had been evading arrest for the rape of Kyla Hidalgo, that Defendant had been in contact with Neil Broussard, that Defendant

took possession of Neil Broussard's BMW and even picked him up from his hotel room approximately thirty minutes before Catherine Hidalgo called 911, and that Catherine identified Neil Broussard as the person who attacked her family. The affidavit shows that Neil Broussard shot Catherine, her daughter Kyla, and Kyla's boyfriend multiple times; and that Kyla and her boyfriend died from their injuries. And the affidavit also shows that Neil Broussard kidnapped K.H.H. and stole Catherine Hidalgo's car.

To summarize, the facts presented in the warrant affidavit support a reasonable belief that crimes had been committed: rape, molestation, murder, attempted murder, kidnapping, and unauthorized use of an automobile. Those facts support a reasonable belief Defendant was a participant in those crimes as an accessory or conspirator. And those facts further support a reasonable belief that Defendant had possession of her cell phone during the commission of the crimes, including aiding her husband in evading arrest. By comparison, the limited information included in the excised paragraph contributes nothing to the establishment of probable cause to search Defendant's phone: the deleted information from Defendant's second statement neither motivated nor affected the officers' decision to obtain the search warrant.

In the end, the trial court abused its discretion in failing to apply the independent source doctrine to warrant number CPSO-2020-6793 and in suppressing the evidence seized pursuant to this warrant.

Warrant CPSO-2020-6839, July 19, 2020, 7:24 p.m.

The trial court cited this warrant number in suppressing GPS data for Defendant's cell phone. In the warrant affidavit, law enforcement sought to obtain

11

AT&T records for cell number (337) 936-9225 from July 1 through July 18, 2020, with the subscriber for that number being Neil Broussard.

However, contrary to the trial court's finding that the GPS evidence seized under this warrant should be suppressed, the warrant application did not call for the seizure of any GPS data. In other words, the warrant did not request historic GPS tracking of phone number (337) 936-9225. Instead, the warrant sought permission to perform a "00phonerecordscheck00" to obtain "all device phone numbers and all device IMEI numbers associated with Neil Broussard['s] Account 578171463895, especially for any Mobile MiFi, WiFi, or Mobile Wireless Router." Additionally, no evidence was presented at any hearing that this warrant resulted in the seizure of GPS data. Hence, the trial court's suppression of evidence seized pursuant to this warrant exceeded the scope this court's remand order.

For these reasons, the trial court's ruling, insofar as it pertains to warrant number CPSO-2020-6839, constitutes an abuse of discretion. The evidence obtained under this warrant should not have been suppressed.

Warrant CPSO-2020-6985, July 29, 2020, 4:54 p.m.

The trial court did not specifically cite this warrant number in suppressing evidence seized from Defendant and Neil Broussard's home. However, this warrant authorized the search of 931 North Lyons Street, four vehicles parked in the driveway (a black 2008 BMW 335i, a white 2018 GMC Sierra, a black 2008 BMW 535i, and a silver BMW), and a detached shed on the southside of the property for the purpose of finding evidence of two counts of first degree murder.

Yet here again, without considering information from Defendant's suppressed statement, the warrant affidavit contains sufficient facts to support a reasonable belief that both Defendant and Neil Broussard had committed crimes: rape, murder,

conspiracy to murder, accessory to murder, accessory after the fact, attempted murder, and kidnapping. Those facts also support a reasonable belief that Defendant and Neil Broussard resided at 931 North Lyons Street, that Defendant had access to the residence during the time leading up to the murders, and that at least one of the vehicles parked at the address had been used to facilitate the murders, attempted murders, and kidnapping. The facts of the warrant affidavit further support a reasonable belief that evidence of the crimes could be found in buildings located at the address (house and shed) and in the vehicles parked at the residence. Hence, the warrant application established probable cause for the requested search. And one more thing: based on our review of the record, it is clear to us that Defendant's suppressed statement neither motivated nor affected the officers' decision to seek this warrant.

Yet as before, the search warrant application here does not establish probable cause to believe evidence of illicit narcotics or paraphernalia would be found at the residence. But unlike our discussion of warrant number CPSO-2020-6782, any money cache seized under this warrant (CPSO-2020-6985) would evidence that Defendant or Neil Broussard planned to flee from prosecution.

In sum, except any drug evidence seized, the trial court abused its discretion in suppressing the evidence seized pursuant to warrant number CPSO-2020-6985.[1]

## DISPOSITION

We grant in part the application for supervisory writ filed by the State of Louisiana: this court reverses the trial court's ruling that Defendant's July 15, 2020

---

[1] The parties have stipulated that there are many other warrants that are within the scope of the remand and should be addressed in this opinion. We disagree. The validity of those warrants is not at issue on remand because they do not authorize the search or seizure of Defendant's cell phone, GPS data, day planner, or physical evidence obtained from her residence. Therefore, our ruling here does not address the validity of those other warrants.

13

interview was involuntarily given, meaning that Defendant's statements from that interview can be used by the State as impeachment evidence if Defendant testifies at trial. This court further reverses the trial court's ruling suppressing the searches and seizures of Defendant's phone, GPS data, and items from Defendant's residence.

Yet we also deny in part the writ application: this court denies the State's writ application insofar as it may contest the search for and seizure of any United States cash currency and drug evidence during the first search of Defendant's residence authorized by warrant number CPSO-2020-6782. This court further denies the State's writ application insofar as it may contest the search for and seizure of any drug evidence during the second search of Defendant's residence authorized by warrant number CPSO-2020-6985.

And finally, we remand this matter to the trial court for further proceedings consistent with this ruling.

**WRIT GRANTED AND MADE PEREMPTORY IN PART;**
**WRIT DENIED IN PART.**