UNITED STATES of America,
Plaintiff–Appellee,

v.

Dennis Guy CLARK, Defendant–
Appellant.

No. 99–30200.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 7, 2000

Filed July 17, 2000

Eric J. Wildman, Arkoosh Law Offices, Chtd., Gooding, Idaho, for the defendant-appellant.

Kim R. Lindquist, Assistant United States Attorney, Boise, Idaho, for the plaintiff-appellee.

Before: HUG, Chief Judge, BRUNETTI, and GOULD, Circuit Judges.

GOULD, Circuit Judge:

Following a jury trial in the United States District Court for the District of Idaho, Dennis Guy Clark ("Clark") was convicted of the following federal offenses arising from his involvement in the burglary of a pawn shop in Salmon, Idaho: distribution of marijuana in violation of 21 U.S.C. § 841(a)(1); theft of firearms moved in interstate commerce in violation of 18 U.S.C. § 924($l$); theft of firearms from a federally licensed firearms dealer in violation of 18 U.S.C. § 924(m); possession of a stolen firearm which has moved in interstate commerce in violation of 18 U.S.C. § 922(j); and being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The district court sentenced Clark to 293 months in prison. Clark appeals the district court's judgment of conviction arguing that the district court erred by denying Clark's motion to dismiss the indictment because (1) a prior plea agreement immunized Clark from prosecution, and (2) the government had a duty to disclose its investigation of the Salmon burglary when it negotiated a prior plea agreement. We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm, holding that the district court did not err by denying Clark's motion to dismiss the indictment.

## FACTUAL AND PROCEDURAL BACKGROUND

On January 14, 1997, the government indicted Clark in the District of Oregon for a series of post office robberies in Oregon, Idaho and Nevada ("postal robberies"). On March 14, 1997, after Clark admitted his involvement in the postal robberies, Assistant United States Attorney

("AUSA") for the District of Oregon, Fred Weinhouse ("Weinhouse"), sent Clark's attorney Arron Guevara ("Guevara"), an offer of a plea agreement. The plea agreement provided that Clark plead guilty to his involvement in the postal robberies. The plea agreement also provided: "The government agrees that no other charges will be filed against defendant in connection with this investigation." On May 21, 1997, Clark and Guevara executed the plea agreement as offered.

More than a year later, on July 7, 1998, the government indicted Clark and other co-defendants for a burglary of Ack's Auction and Pawn Shop in Salmon, Idaho ("Salmon burglary") that had taken place on October 10, 1996, and that had been under investigation by local and federal law enforcement agents since that time. On November 20, 1998, Clark moved to dismiss the indictment, arguing that the Salmon burglary charges were part of the investigation referred to as "this investigation" in the 1997 plea agreement covering the postal robberies. The district court held an evidentiary hearing on Clark's motion to dismiss.

During the hearing Clark's attorney put forth evidence demonstrating that the investigations of the Salmon burglary and the postal robberies were somewhat intertwined. The district court noted that evidence of the intermingling of the investigations of the different crimes was relevant to the meaning of "this investigation" only so far as the parties to the plea agreement were aware of the intermingling.

In denying the motion to dismiss the indictment, the district court considered evidence of the understanding of the persons who negotiated the plea agreement, AUSA Weinhouse and Guevara, and of Clark. The court found that AUSA Weinhouse was not thinking of the Salmon burglary investigation when he made his plea offer because he did not know of it at the time. Further, when AUSA Weinhouse learned of the Salmon burglary investigation before executing the plea agreement, he reviewed the agreement and concluded (and documented) that the Salmon burglary was not part of "this investigation" as referenced in the plea agreement.

The court found that Clark's defense counsel Guevara did not know about the Salmon burglary investigation when he negotiated the plea agreement, and that he did not understand it to be included in the plea agreement. Further, the court found that, had Guevara known of the Salmon investigation, he would have negotiated further to reach agreement also regarding that burglary.

Finally, the court found that, although Clark testified that he believed that the plea agreement gave him immunity from any federal prosecution for crimes for which the government had knowledge at the time of the agreement, his testimony was inconsistent with the agreement because the language of the agreement limited immunity to crimes that were part of "this investigation," not all federal crimes known to the government. The court further found that the defendant's purported belief that "this investigation" covered the Salmon burglary was objectively unreasonable because there was very little evidence of a link between investigations of the two different crimes.

Accordingly, finding that Clark had failed to carry his burden of proving that the parties reasonably understood the term "this investigation" to cover the Salmon burglary, the district court denied the motion to dismiss the indictment. Clark then proceeded to a jury trial, was convicted as charged and was sentenced to 293 months to be served concurrently with the time he was serving for the postal robberies. Clark appeals the judgment of conviction, arguing that the district court erred in denying his motion to dismiss the indictment.

## DISCUSSION

### A. Plea agreement

Clark argues that the district court erred by denying his motion to dismiss the

indictment because he was immunized from prosecution of the Salmon burglary by the term "this investigation" in the plea agreement regarding the postal robberies. We disagree.

■ The district court's interpretation and construction of a plea agreement is reviewed for clear error. *See United States v. Ajugwo,* 82 F.3d 925, 928 (9th Cir.1996). Factual findings regarding the terms of the plea agreement are also reviewed for clear error. *See id.* Whether the government breached a plea agreement is reviewed de novo. *See United States v. Fisch,* 863 F.2d 690, 690 (9th Cir.1988). Whether language in a plea agreement is ambiguous is subject to a de novo review. *See United States v. Anderson,* 970 F.2d 602, 606 (9th Cir.1992), *amended* 990 F.2d 1163 (9th Cir.1993).

■ Our analysis begins with the fundamental rule that "[p]lea agreements are contractual in nature and are measured by contract law standards." *United States v. De la Fuente,* 8 F.3d 1333, 1337 (9th Cir. 1993) (quoting *United States v. Keller,* 902 F.2d 1391, 1393 (9th Cir.1990)). "In construing the terms of an agreement and the parties' obligations under it, the courts generally employ traditional contract principles." **G. Nicholas Herman,** *Plea Bargaining,* § 10:04, at 190 (1997). A leading criminal procedure treatise illuminates the relationship between these contract law principles and broader issues of criminal procedure.

[Contract rules] have to be applied to plea agreements with two things in mind which may require their tempering in particular cases. First, the defendant's underlying "contract" right is constitutionally based and therefore reflects concerns that differ fundamentally from and run wider than those of commercial contract law.... Second, with respect to federal prosecutions, the courts' concerns run even wider than protection of the defendant's individual constitutional rights—to concerns for the "honor of the government, public confidence in the fair administration of justice, and the effec-

tive administration of justice in a federal scheme of government." [This means that] both constitutional and supervisory concerns require holding the Government to a greater degree of responsibility than the defendant (or possibly than would be either of the parties to commercial contracts) for imprecisions or ambiguities in plea agreements.... This is particularly appropriate where, as would usually be the case, the Government has proffered the terms or prepared a written agreement—for the same reason that dictate that approach in interpreting private contracts.

5 **Wayne R. Lafave, Jerold H. Israel & Nancy J. King,** *Criminal Procedure,* § 21.2(d), at 57 (2d ed.1999) (quoting *United States v. Harvey,* 791 F.2d 294 (4th Cir.1986)).

■ In our precedents, we have made clear that several well-established rules of interpretation govern our consideration of the plea agreement in dispute. If the terms of the plea agreement on their face have a clear and unambiguous meaning, then this court will not look to extrinsic evidence to determine their meaning. *See United States v. Ajugwo,* 82 F.3d 925, 928 (9th Cir.1996). If, however, a term of a plea agreement is not clear on its face, we look to the facts of the case to determine what the parties reasonably understood to be the terms of the agreement. *See United States v. Gerace,* 997 F.2d 1293, 1294 (9th Cir.1993). If, after we have examined the extrinsic evidence, we still find ambiguity regarding what the parties reasonably understood to be the terms of the agreement, then the government "ordinarily must bear responsibility for any lack of clarity." *De la Fuente,* 8 F.3d at 1337 (quoting *United States v. Packwood,* 848 F.2d 1009, 1011 (9th Cir.1988)). "Construing ambiguities in favor of the defendant makes sense in light of the parties respective bargaining power and expertise." *Id.*

■ Here, the parties dispute the meaning of the term "this investigation." The issue is whether "this investigation"

included the Salmon burglary. We must first consider whether the term "this investigation" is clear and unambiguous. Following traditional rules of contract interpretation, we must examine the plain language of the term in the context of the document as a whole. *See, e.g., Stanford Ranch, Inc., v. Maryland Casualty Co.,* 89 F.3d 618, 626 (9th Cir.1996) (interpreting the meaning of a contract under California law); **Herman,** *Plea Bargaining,* § 10:04, at 190. For the reason below, we conclude that the term "this investigation" unambiguously refers only to the postal robberies.

In the plea agreement Clark pleaded guilty to an indictment filed in the United States District Court for the District of Oregon charging Clark with possession of stolen money orders in violation of 18 U.S.C. § 500. Clark also pleaded guilty to a United States Attorney's Information charging him with (1) a postal burglary in the District of Idaho, and (2) a postal burglary in the Eastern District of California in violation of 18 U.S.C. § 2115. After the plea agreement describes the crimes to which Clark agrees to plead guilty, it states that "[i]n exchange for the defendant's pleas of guilty as outlined above, the government agrees ... that no other charges will be filed against defendant in connection with this investigation." The plea agreement mentions no crimes or charges other than the three postal robberies to which Clark pleaded guilty. Thus, it appears that the term "this investigation" clearly and unambiguously refers to the investigation of the postal robberies, and does not encompass the Salmon burglary.

Even assuming "this investigation" is ambiguous, we arrive at the same conclusion because the extrinsic evidence shows that "this investigation" refers only to the postal robberies. Neither AUSA Weinhouse nor Guevara negotiated the plea agreement understanding the term "this investigation" to immunize Clark from prosecution of the Salmon burglary, as neither even knew of the government's investigation into that crime. Clark's now asserted understanding of the term "this

investigation," as covering all federal crimes of which the government had knowledge of at the time of the plea agreement, even if credited, is unreasonable. As the district court held, Clark's testimony regarding his purported "understanding" directly conflicts with the agreement's plain language, which offers him the assurance that he would receive immunity only for other crimes that were part of "this investigation," regardless of the government's knowledge.

Clark contends that *De la Fuente,* 8 F.3d at 1338, holds that any ambiguity in the meaning of a plea agreement term should be resolved in favor of the defendant. The government counters that *United States v. Helmandollar,* 852 F.2d 498, 502 (9th Cir.1988), places the burden of proving the meaning of a disputed plea agreement term on the defendant. The cases, however, do not conflict. *Helmandollar,* stands only for the proposition that the defendant must prove the *existence* of a plea agreement. Here, the parties do not dispute the existence of the plea agreement.

When a plea agreement term is ambiguous, a court, following contract law, objectively looks to extrinsic evidence to determine the parties' reasonable understanding of the term's meaning. *See, e.g., United States v. Gerace,* 997 F.2d 1293, 1294 (9th Cir.1993). Only if the extrinsic evidence regarding the parties' intent fails to resolve the term's ambiguity must the court apply the rule construing ambiguous terms against the drafting party. *See Board of Trade v. Swiss Credit Bank,* 597 F.2d 146, 149 (9th Cir. 1979).

Here, the extrinsic evidence unambiguously demonstrates that the term "this investigation" did not cover the Salmon burglary. The extrinsic evidence overwhelmingly shows that those who negotiated the agreement had only the postal robberies in mind. Any broader reading is patently unreasonable and is without support in the language of the agreement or

the expressed intentions of the parties. Thus, we hold that the parties could not have reasonably understood the term "this investigation" to cover the Salmon burglary.

### B. Duty to disclose

 Clark argues that the government violated his due process rights because it did not disclose to him the Salmon burglary charges when AUSA Weinhouse learned of the charges before executing the plea agreement. Clark's argument lacks merit.

 During plea bargain negotiations, a prosecutor has a good faith duty to inform a defendant of possible future criminal charges only when a failure to inform rises to the level of a denial of due process. *See United States v. Krasn*, 614 F.2d 1229, 1234 (9th Cir.1980). "Under the Due Process clause, criminal prosecutions must comport with prevailing notions of fundamental fairness." *United States v. Endicott*, 869 F.2d 452, 455 (9th Cir.1989) (quoting *California v. Trombetta*, 467 U.S. 479, 485, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984)). Whether a defendant has been denied fundamental fairness from a failure to disclose is determined by the facts of each case. *See Krasn*, 614 F.2d at 1234. In *Krasn*, we held that a failure to disclose present charges during plea negotiations of earlier charges did not deny a defendant due process under circumstances where (1) the two sets of charges "involved independent criminal transactions," and (2) the government was not "conducting an active, ongoing ... investigation [of the present charge] at the time of bargaining" because the indictment was not filed until three years after the defendant had pled guilty under the plea bargain. *Id.*

Here, as in *Krasn*, the Salmon burglary and the postal robberies involved independent criminal transactions. Further, the government here did not file an indictment in the Salmon burglary until more than a year after executing the postal robberies plea agreement. Although, in *Krasn*, the indictment was filed three years after the plea agreement, this difference, in our view, does not impact fundamental fairness. Additionally, the prosecutor's reasons for not disclosing the future charges do not suggest foul play. AUSA Weinhouse testified that he did not disclose the pending investigation of the Salmon burglary because that investigation was ongoing, could mean a large sentence, involved an informant and could raise safety concerns if disclosed. Non-disclosure for these reasons does not offend due process. Thus, we hold that AUSA Weinhouse's failure to inform Clark about the pending Salmon burglary investigation did not rise to the level of a due process violation.

### CONCLUSION

We conclude that the district court did not err when it denied Clark's motion to dismiss the indictment, and we therefore AFFIRM.