**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

            v.

FREDDIE L. FRANKLIN,
            *Defendant-Appellant.*

No. 09-30041

D.C. No.
2:06-cr-00104-
EFS-1

OPINION

Appeal from the United States District Court
for the Eastern District of Washington
Edward F. Shea, District Judge, Presiding

Argued and Submitted
November 5, 2009—Seattle, Washington

Filed April 29, 2010

Before: Arthur L. Alarcón, Andrew J. Kleinfeld and
Richard R. Clifton, Circuit Judges.

Opinion by Judge Clifton

## COUNSEL

Tyler H.L. Tornabene, Spokane, Washington, for plaintiff-appellee United States of America.

Christopher A. Bugbee, Spokane, Washington, for defendant-appellant Freddie L. Franklin.

## OPINION

CLIFTON, Circuit Judge:

Freddie Franklin conditionally pled guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g) and now appeals the district court's denial of his motions to suppress evidence and to dismiss. Franklin's motion to suppress contended that a search of a motel room he occupied, conducted without a warrant and based on Franklin's status as a probationer under state law, violated the Fourth Amendment because officers did not have probable cause to believe that he lived in the motel room. In his motion to dismiss, Franklin argued that his plea agreement in a state court prosecution arising out of the same conduct included a promise that federal charges would not be brought against him. We affirm.

## I.  Background

Because of three prior felony convictions, Franklin was in January 2006 subject to "community custody" under Washington state law.[1] As a condition of his community custody,

---

[1] Washington law defines "community custody" as "that portion of an offender's sentence of confinement in lieu of earned release time or imposed as part of a sentence under this chapter and served in the community subject to controls placed on the offender's movement and activities by the department." Wash. Rev. Code § 9.94A.030(5).

he agreed to report his current address and any change in his address to his Community Corrections Officer (CCO), John Hernandez. He also agreed to "abide by written or verbal instructions issued by" Hernandez.

On January 4, 2006, Franklin told Hernandez that he was homeless. Hernandez instructed Franklin to contact him by midnight that night to say where he would be staying and where he planned to reside in the future. Hernandez also instructed Franklin to report back in person on January 17. Franklin did not contact Hernandez before midnight as instructed, nor did he report to Hernandez in person on January 17.

On January 18, between 8:30 and 9:00 am, Hernandez received a call from a female informant with whom Franklin had a child. The informant told Hernandez that Franklin was living in Room 254 of a local motel. She said that Franklin was staying with another man and that he had a handgun and ten rounds of ammunition. Based on previous dealings with this informant, Hernandez believed she was credible.

Hernandez spoke to his supervisor, who authorized a probation search provided that Hernandez could first confirm that Franklin in fact resided at the motel room. Hernandez contacted Spokane Police Officer Michael Roberge, who went to

---

The parties do not make clear whether Franklin's community custody was more analogous to parole ("in lieu of earned release time") or probation ("imposed as part of a sentence"). The Government's brief equates Franklin's community custody to probation, while Franklin's brief characterizes it as parole. Where this distinction might make a difference—notably, for purposes of reasonable expectations of privacy under the Fourth Amendment, *see Samson v. California*, 547 U.S. 843, 850 (2006) ("[P]arolees have fewer expectations of privacy than probationers, because parole is more akin to imprisonment than probation is to imprisonment.") —we assume, in Franklin's favor, that his community custody is the equivalent of probation. The assumption does not affect our result.

the motel to determine if Franklin was staying in the room. Officer Roberge went to the front desk and showed the clerk a booking photograph of Franklin. The clerk confirmed both that Franklin was currently staying in Room 254 and that Franklin had personally rented the room.

Hernandez, Roberge, and other officers went to Room 254. They arrived before 9:45 am. Hernandez knocked on the door and heard a loud voice, which he recognized as Franklin's. The voice asked, "Who is it?" Hernandez replied, "DOC" (Department of Corrections), and Franklin opened the door. Officers immediately restrained him. They then searched the room and discovered a gun, which Franklin admitted was his.

Pursuant to a plea agreement, Franklin pled guilty in state court to a state charge of unlawful possession of a firearm. The state plea agreement provided that "[n]o person has made promises of any kind to cause me to enter this plea except as set forth in this statement." The agreement made no reference to federal prosecution.

Franklin was subsequently indicted in federal court for being a felon in possession of a firearm and for possessing a stolen firearm. He filed a motion to suppress evidence obtained in the search of the motel room and a motion to dismiss based on the state plea agreement. After a hearing, the district court denied both motions.

On the suppression motion, the district court found that CCO Hernandez had probable cause to believe that Franklin was residing in Room 254. The court also found that Hernandez had reasonable suspicion that Franklin had violated his community custody agreements through his failure to report to Hernandez on January, 17, 2006 and his failure to comply with the address-reporting conditions of his community custody.

The district court found that the state plea agreement was unambiguous and that it did not preclude federal prosecution.

Because of the lack of ambiguity, the court noted that it did not need to consider extrinsic evidence, but that even if such evidence were considered, it would still find that there was no agreement precluding federal prosecution.

Franklin entered a conditional guilty plea to one count of being a felon in possession of a firearm, reserving his right to appeal these decisions, and this appeal followed.

## II.   Motion to Suppress Evidence

Franklin appeals the denial of his motion to suppress on the ground that officers lacked probable cause to believe that he was residing in the motel room searched without a warrant. We review the validity of a warrantless search de novo. *United States v. Johnson*, 256 F.3d 895, 905 (9th Cir. 2001) (en banc). The district court's factual finding are reviewed for clear error. *United States v. McIver*, 186 F.3d 1119, 1124 (9th Cir. 1999).

**[1]** Franklin's community custody agreements authorized "search and seizure of [his] person, residence, automobile, or other personal property [without a warrant upon] reasonable cause on the part of the Department of Corrections to believe that [he] violated the conditions/requirements or instructions" of his community custody. The Fourth Amendment allows officers to search the residence of a probationer like Franklin without a warrant upon reasonable suspicion of a probation violation. *See United States v. Knights*, 534 U.S. 112 (2001) (upholding the warrantless search of a probationer's residence that was supported by a probation condition authorizing the search and reasonable suspicion).

Franklin does not dispute that the officers had reasonable suspicion that he had violated the terms of his community custody by failing to report to CCO Hernandez as scheduled and by failing to advise Hernandez where he was living. The

contested issue is whether the officers had sufficient basis to believe that Room 254 was Franklin's residence.

**[2]** In *Motley v. Parks*, 432 F.3d 1072 (9th Cir. 2005), an en banc panel of our court held that "before conducting a warrantless search [of a residence] pursuant to a parolee's parole condition, law enforcement officers must have probable cause to believe that the parolee is a resident of the house to be searched." *Id.* at 1080. The probable cause standard for a parole search necessarily applies to probation searches as well. Both parolees and probationers "are on the 'continuum' of state-imposed punishments," *Samson v. California*, 547 U.S. 843, 850 (2006), and parolees "have fewer expectations of privacy than probationers, because parole is more akin to imprisonment than probation is to imprisonment." *Id.* Because the Fourth Amendment gives parolees the benefit of probable cause in this context, it must extend that same protection to probationers.

**[3]** Probable cause requires "that the facts available to the officer would warrant a man of reasonable caution in the belief" that Room 254 was Franklin's residence at the time. *Texas v. Brown*, 460 U.S. 730, 742 (1983) (internal quotation marks omitted).

**[4]** The facts overwhelmingly support the district court's finding that there was probable cause to believe that Franklin was residing in the motel room. Before the search was conducted, an officer verified with the front desk clerk that a person resembling Franklin's photograph was staying in Room 254 and had personally rented the room. After CCO Hernandez knocked on the door of the room, a voice from inside called "Who is it?," and Hernandez recognized the voice as Franklin's. Hernandez had previously received a tip that Franklin was living in the room from a credible informant whose past relationship with Franklin gave Hernandez reason to believe that she would know where Franklin was living.

Some of those facts individually would be sufficient to support probable cause. In combination, there is no serious doubt.

That a motel room was identified as Franklin's residence makes this case different, but it does not make it difficult. We recognized in *United States v. Howard*, 447 F.3d 1257, 1262 (9th Cir. 2006), that "[w]e have applied a relatively stringent standard in determining what constitutes probable cause that a residence belongs to a person on supervised release." But the cases cited and discussed in *Howard* involved parolees or probationers thought to be living at homes identified as belonging to others. *See Motley*, 432 F.3d 1072 (parolee thought to be living at an apartment belonging to his girlfriend); *Watts v. County of Sacramento*, 256 F.3d 886 (9th Cir. 2001) (fugitive identified by an anonymous tip as possibly being located at a certain address with his girlfriend and two children); *United States v. Conway*, 122 F.3d 841 (9th Cir. 1997) (probationer thought to be living at a residence not reported as his); *United States v. Watts*, 67 F.3d 790 (9th Cir. 1995) (parolee said to be residing at a third party's house); *United States v. Harper*, 928 F.2d 894 (9th Cir. 1991) (parolee believed to be living at his brothers' residence); *United States v. Dally*, 606 F.2d 861 (9th Cir. 1979) (parolee thought to be residing at a third party's apartment).

Residential arrangements take many forms. A "residence" does not have to be an old ancestral home, but it requires more than a sleepover at someone else's place. "It is insufficient to show that the parolee may have spent the night there occasionally." *Howard*, 447 F.3d at 1262. That a house or apartment belonging to someone else is also the "residence" of a probationer is not an inference that can be drawn simply because the probationer happens to be seen there. That a given home is known to belong to someone else necessarily raises at least some concern for the rights of that other person.

**[5]** When the location in question is a motel room, however, especially one identified as having been rented by the

person in question, establishing that location as the person's residence is much less difficult. There is no need to draw an inference based solely on physical presence in someone else's home, and no concern about the rights of an established resident. The temporary nature of the occupancy does not change the fact that for the night or nights that Franklin rented Room 254, he was legally entitled to use the room and to control access to it. For that time period, the room was his residence in the sense meant in the community custody agreements. As such, it was subject to a warrantless search based on reasonable suspicion.

**[6]** There was ample evidence to support the district court's finding that the officers had probable cause to believe that Room 254 was Franklin's residence at the time of the search. The motion to suppress was properly denied.

## III.  Motion to Dismiss

Franklin also argues that the federal charges should have been dismissed because the agreement which led to his guilty plea in state court provided that no federal charges would be pursued.

**[7]** "Plea agreements are contractual in nature and are measured by contract law standards." *United States v. De la Fuente*, 8 F.3d 1333, 1337 (9th Cir. 1993) (quoting *United States v. Keller*, 902 F.2d 1391, 1393 (9th Cir. 1990)). In *United States v. Clark*, 218 F.3d 1092 (9th Cir. 2000), we stated our framework for analyzing plea agreements:

> If the terms of the plea agreement on their face have a clear and unambiguous meaning, then this court will not look to extrinsic evidence to determine their meaning. If, however, a term of a plea agreement is not clear on its face, we look to the facts of the case to determine what the parties reasonably understood to be the terms of the agreement.

*Id.* at 1095 (citations omitted). We review de novo whether a plea agreement is ambiguous. *Id.* A district court's construction and interpretation of a plea agreement is a finding of fact that we review for clear error. *Id.*

At the first step of the *Clark* analysis, the district court here concluded that "the terms of the Plea Agreement are clear and unambiguous and do not contain a promise that federal charges would not be brought — nor even reference federal prosecution." We agree with that assessment.

**[8]** The only purported reference identified by Franklin in the state plea documents to support his contention that there was an agreement that federal charges would not be brought is a handwritten correction of an obvious typographical error. One line in the Findings of Fact and Conclusions of Law supporting the state court guilty plea was changed, by the insertion of a single handwritten word, from "The sentence holds Mr. Franklin for his actions." to "The sentence holds Mr. Franklin *accountable* for his actions." Franklin argues that the word "accountable" incorporated a side agreement, referenced nowhere else in the document, that no federal charges would be brought against him. The district court rejected this argument, and it did not err in doing so. The insertion of the word "accountable" simply cannot support the inference Franklin tries to draw and is not enough to make the agreement ambiguous. Moreover, the plea agreement included the explicit statement that "[n]o person has made promises of any kind to cause me to enter this plea except as set forth in this statement." Since there was no promise not to bring federal charges set forth in the statement, it was logical for the district court to conclude that there was no such promise.

**[9]** We agree with the district court that the plea agreement was unambiguous and did not reflect any agreement not to prosecute Franklin on federal charges. Under *Clark*, that ends the matter, and there is no need or basis for us to consider

extrinsic evidence. The motion to dismiss was properly denied.

**AFFIRMED.**