******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* CRAIG KALLBERG
(SC 19536)

Rogers, C. J., and Palmer, McDonald, Espinosa and Robinson, Js.

*Argued January 23—officially released June 13, 2017*

*Margaret Gaffney Radionovas*, senior assistant state's attorney, with whom, on the brief, were *Brian Preleski*, state's attorney, and *Kevin Murphy*, former supervisory assistant state's attorney, for the appellant (state).

*Alice Osedach*, senior assistant public defender, for the appellee (defendant).

*Opinion*

McDONALD, J. The defendant, Craig Kallberg, was convicted of larceny in the third degree as an accessory in violation of General Statutes §§ 53a-8 and 53a-124 (a) (2) and conspiracy to commit larceny in the third degree in violation of General Statutes §§ 53a-48 and 53a-124 (a) (2) after he unsuccessfully moved to dismiss those charges on the basis of the state's prior entry of a nolle prosequi on the same charges. The issue in this certified appeal[1] is whether the Appellate Court properly reversed the judgment of conviction on the ground that the entry of a nolle on those charges and nolles on charges in three other cases was part of an agreement between the state and the defendant, contemplating a global disposition supported by consideration, which barred his prosecution in the present proceeding. The state contends that the Appellate Court improperly concluded that the trial court's finding that the parties intended to enter into an agreement relating to only one of the cases was clearly erroneous, or to the extent that the agreement was ambiguous, it should have been construed in the defendant's favor. *State* v. *Kallberg*, 157 Conn. App. 720, 729–30, 118 A.3d 84 (2015). We conclude that the agreement was ambiguous as to the parties' intent, and therefore must be construed in the defendant's favor as a global disposition. Accordingly, we affirm the Appellate Court's judgment.

The record reveals the following undisputed facts. Michael Higgins, an acquaintance of the defendant, confessed to the police that he and the defendant had pawned several items, including a set of golf clubs. A resident of the same apartment building where Higgins lived had reported to the police that various items had been stolen from his basement storage locker; many of those items were the same items that Higgins admitted to having pawned. In August, 2010, the defendant was arrested and charged with burglary in the third degree, larceny in the third degree, and conspiracy to commit both of those offenses under docket number CR-10-0046439-T (burglary/larceny case).

By September, 2011, the defendant had three other cases pending against him from arrests prior to 2011, each under separate docket numbers, including one charging him with possession of narcotics (drug case).[2] In September, 2011, the state entered a nolle prosequi in each of the defendant's four pending cases at a hearing before Judge Kahn, who had been assigned to serve as the trial judge.[3] Approximately one year later, the state initiated the present prosecution, charging the defendant with larceny in the third degree as an accessory and conspiracy to commit larceny in the third degree for his role in the storage locker thefts.

The defendant filed a motion to dismiss the charges, claiming that they had been permanently disposed of

as part of an agreement (nolle agreement) that was memorialized on the record in the hearing before Judge Kahn. The defendant asserted that Judge Strackbein had assisted the parties in negotiating a plea agreement that was a global disposition of the four pending cases, under which he would plead guilty to possession of drug paraphernalia in the drug case and pay a fine of $300, in exchange for which the state would enter nolles in the other three cases, including the burglary/larceny case. The defendant further asserted that due to Judge Strackbein's subsequent unavailability to accept the plea, the parties had effectuated a comparable global disposition whereby the defendant made a donation of $271 to the Connecticut Criminal Injuries Compensation Fund (victim's fund) in exchange for nolles on all of his cases. The state opposed the motion, contending that the donation was consideration for the nolle in the drug case only.

The sole evidence offered in connection with the motion to dismiss was the transcript of the hearing before Judge Kahn, which provided in relevant part as follows:

"[Judge Kahn]: Good afternoon . . . . They're four matters correct?

\* \* \*

"[The Prosecutor]: MV-10-228488 . . . CR-10-46914 and then CR-10-47442 and lastly CR-10-46439. These matters are all on the trial list and over a course of time—some of these are a year old, going on a year and a half old, [defense counsel] and I we were able to have recent discussions.

"I'll start with the file ending in 488, no insurance, traveling unreasonably fast. What we do in those cases is make sure that the insurance is gotten, if in fact he's driving an automobile, and the license is still valid or is valid. [The defendant] says that . . . he was operating with a valid motor vehicle license. The state is entering a nolle on that.

"[Judge Kahn]: Nolle is noted.

"[The Prosecutor]: Breach of [the] peace [in the second degree], which is the file ending in 442, we reached out to the complainant in that matter. . . . [W]e spoke to his attorney . . . [who] indicated and represented to us that . . . he does not want to pursue. In a normal day what we do is probably sub this . . . but we're entering a nolle in that matter based on the victim's wishes.

"[Judge Kahn]: Nolle noted.

"[The Prosecutor]: I'll leave the file ending with 914 to the end. The other file it looks fairly complicated and serious ends in 439. It's a bunch of burglaries; it's a larceny, at least the allegations. We have a couple of problems in that matter. One is the burglaries occurred

to storage sheds. It doesn't mean they weren't burglaries, but the storage sheds had no tops on them. And it's arguable whether we could ever prove the breaking and entering or the illegal entry when in fact [the defendant] was alleged and admitted to peeking into the top. Many of those that he peeked into were empty. So what we really have in this case when it's all boiled down is a larceny in the [fourth] degree by possession. [The defendant] really gave up possession to the police of those possessions that he had possession of, isn't that true, [defense counsel]?

"[Defense Counsel]: That's true.

"[The Prosecutor]: So nobody here is out anything in this particular file. The state's entering a nolle in that file.

"[Judge Kahn]: Nolle noted.

"[The Prosecutor]: Now that leaves us with the drug case . . . . [W]e have various dosages of hydrocodone which is a narcotic or oxycodone a narcotic. But we have [the defendant] who over the course of time maybe not commensurate exactly with the day in question here, he has had prescriptions in the past and they have been provided to me—a copy of the bottles have been provided to me: I took some issue with [defense counsel] in that the prescription was say six or seven months old. But suffice it to say, this is still a simple possession of narcotics—a little shot glass of crushed up narcotics and another person in the car who's already copped to some of these. . . .

"*So what we had here was a proposed disposition to get rid of all of these files with a plea of drug paraphernalia and a fine of $300. That didn't work out today because we were unable to actually tap into Judge Strackbein. So I took the bull by the horns and asked* [*the defendant*] *to make a donation of $271 to the victim's fund.*[4] Do we have a copy of that receipt in the file, madam clerk?

"The Clerk: Yes, we do. . . .

"[The Prosecutor]: . . . In light of that, what we do each and every day over in [another geographical area] is to nolle this case, as well. *So, now* [*the defendant's*] *matters are all resolved* . . . .

"[Judge Kahn]: All right, I'll note the nolle on that. I do have something I'd like to put on the record. First, I want to put on the record that I would have been the trial judge. I know that these matters had been, at least one of them if not more, on the trial list. And so [the prosecutor]—and by the way I do know his nature is not to enter nolles lightly and so it's not his practice to nolle cases unless there's good reason, so I'm going to take him at his word that he couldn't prove the case. He did mention to me there were some issues about some codefendants that may be deceased, as well, in

chambers.

"[The Prosecutor]: Actually I should say that in the burglary/larceny case the codefendant in this matter is dead. The victim can't be found. That case as it stands today is unprovable.

"[Judge Kahn]: Okay, so I want to be able to note that [the prosecutor] was very careful not to mention what the offer was, but he came up to chambers. He told me that you were here [defense counsel], your client was here. *That you had worked out a deal.* That he had asked Judge Strackbein, I guess, to put this on." (Emphasis added; footnote added.)

Judge Kahn explained that Judge Strackbein was unavailable due to a scheduling conflict but that Judge Strackbein had "assured me that all the matters had been resolved. . . . I was hesitant to engage in the plea negotiations because I was going to be the trial judge, so I couldn't do that. But [the prosecutor] did tell me that he had some issues. He would nolle some matters because he had an inability to get certain witnesses, but he didn't share with me the substance of it. . . .

"So if Judge Strackbein were here, irrespective of which judge is present, we cannot if the state wishes to enter a nolle, there's nothing the court can do. The state can enter a nolle. It's within the prosecutorial discretion. All the . . . court can do is ask the state to put their reasons on the record. But they can nolle cases whenever they want, and all the court can do is ask the reasons. . . . You've put them on the record, and so I'm not quarreling with that at all."

Judge Kahn then addressed the defendant about his potential substance abuse issues, and warned him that the state would not hesitate to pursue charges against him even if he had a valid prescription, if he abused his medication. Judge Kahn concluded her admonishment by stating: "Hopefully we won't see you again, and I will note the nolles for the reasons stated on the record."[5] Finally, pursuant to the prosecutor's request at the end of the hearing, Judge Kahn ordered that the stolen property still remaining in police custody be returned to its rightful owner.

At the hearing on the motion to dismiss, although the parties contested the meaning of the preceding exchange as to the parties' intent in making the nolle agreement, because neither the defendant nor the state was represented by the counsel from the nolle hearing, they offered no personal knowledge regarding the facts and circumstances surrounding the execution of the agreement. After hearing argument from the parties, the trial court denied the motion to dismiss in an oral decision. The trial court acknowledged that the original plea agreement worked out with Judge Strackbein was a "global deal," but ascribed no significance to that fact because that deal was never effectuated. As to the nolle

agreement that was effectuated, the trial court concluded that the transcript did not support the defendant's claim that this agreement was a global disposition of all of the defendant's cases in exchange for the donation to the victim's fund. Rather, the trial court found it clear from the transcript that the donation had been made to obtain a nolle on the drug case alone. The court ascribed particular significance to the fact that the state had provided reasons for entering nolles on the other cases and to the absence of any statement by the prosecutor that all four cases were nolled in exchange for the donation to the victim's fund.

Following a jury trial, the defendant was convicted of both larceny charges. The court rendered judgment in accordance with the verdict and sentenced the defendant to a total effective sentence of four years of incarceration, suspended after two years, followed by three years of probation.

The defendant appealed to the Appellate Court, claiming, among other things, that the trial court improperly had denied his motion to dismiss. *State* v. *Kallberg*, supra, 157 Conn. App. 720, 722. The Appellate Court agreed. Id., 730. The court prefaced its analysis with this statement: "Whether we view the [nolle] agreement as a purely factual matter of the parties' intent, or whether we view the agreement as ambiguous and therefore to be construed in the defendant's favor, we arrive at the same conclusion." Id., 727. As to the first view, the Appellate Court held that a factual finding that the parties intended to enter into an agreement for a nolle on the drug case only was clearly erroneous, as the court was left with a firm and definite conviction that a mistake had been made. See id., 727–29. The court explained: "The conduct of the parties reveals to us that the defendant was offered a plea agreement, which was to be accepted, but that the unavailability of the judge before whom the plea agreement was to be entered caused the prosecutor to adopt an alternative means of disposing of the cases in a substantially similar fashion in exchange for substantially similar consideration by the defendant. The statements of the prosecutor reflect the intended result: an equivalent substitute for the original plea agreement." Id., 729–30. As to the second possible view of the record, the Appellate Court concluded that to the extent that the nolle agreement was ambiguous as to whether it contemplated a global disposition, it must be construed in favor of the defendant. See id., 727, 730. Accordingly, the Appellate Court reversed the judgment of conviction and remanded the case to the trial court with direction to vacate the conviction and to dismiss the charges. Id., 730. The state's certified appeal to this court followed.

On appeal, the state concedes that the original plea agreement was a global disposition. It contends, however, that the trial court properly determined that the

original plea agreement had no bearing on the construction of the nolle agreement effectuated. The state contends that the Appellate Court engaged in impermissible fact-finding by reading the transcript to reflect an intent to substitute the original global plea agreement with a substantially similar agreement whereby all four cases were nolled in exchange for the donation. The state further contends that the Appellate Court improperly concluded that the trial court's factual finding as to the parties' intent was clearly erroneous, arguing that the transcript of the hearing before Judge Kahn reflects a clear intent by the state to (a) unilaterally nolle the three cases other than the drug case for the reasons stated on the record, and (b) effectuate an agreement in the drug case whereby the state would enter a nolle in exchange for the defendant's donation to the victim's fund. We agree with the Appellate Court that the nolle agreement was ambiguous and should be construed against the state.

"Because a motion to dismiss effectively challenges the jurisdiction of the court, asserting that the state, as a matter of law and fact, cannot state a proper cause of action against the defendant, our review of the court's legal conclusions and resulting denial of the defendant's motion to dismiss is de novo. . . . Factual findings underlying the court's decision, however, will not be disturbed unless they are clearly erroneous." (Citation omitted; internal quotation marks omitted.) *State* v. *Samuel M.*, 323 Conn. 785, 794–95, 151 A.3d 815 (2016). For the reasons that follow, we conclude that de novo review governs our resolution of the present case.

We begin by distinguishing a prosecutor's unilateral entry of a nolle from a bilateral agreement involving entry of a nolle. Practice Book § 39-29 provides that "[a] prosecuting authority shall have the power to enter a nolle prosequi in a case. It shall be entered upon the record after a brief statement by the prosecuting authority in open court of the reasons therefor." We have recognized that "a nolle is, except when limited by statute or rule of practice[6] . . . a unilateral act by a prosecutor, which ends the pending proceedings without an acquittal and without placing the defendant in jeopardy." (Citations omitted; footnote added; internal quotation marks omitted.) *Cislo* v. *Shelton*, 240 Conn. 590, 599 n.9, 692 A.2d 1255 (1997). "Although the entry of a nolle prosequi results in the defendant's release from custody, he can . . . be tried again upon a new information and a new arrest." (Citation omitted.) *State* v. *Lloyd*, 185 Conn. 199, 201, 440 A.2d 867 (1981); accord Practice Book § 39-31.

A nolle may, however, be bargained for as part of a plea agreement; see *State* v. *Daly*, 111 Conn. App. 397, 400 n.2, 960 A.2d 1040 (2008), cert. denied, 292 Conn. 909, 973 A.2d 108 (2009); Practice Book § 39-5 (2); see also *Mason* v. *State*, 302 Md. 434, 440, 488 A.2d 955

(1985) (nolle as part of plea agreement tantamount to dismissal of nolled charge); or as part of an agreement whereby the defendant provides something else of benefit to the state or the victim in exchange for entry of a nolle. See, e.g., *People* v. *Reagan*, 395 Mich. 306, 317–18, 235 N.W.2d 581 (1975) (enforcing agreement in which prosecution would enter nolle if defendant passed polygraph examination); see also *Holman* v. *Cascio*, 390 F. Supp. 2d 120, 123–24 (D. Conn. 2005) ("a nolle will preclude a subsequent case for malicious prosecution [due to lack of a favorable termination of the prior criminal case] when it was made as part of a plea bargain or under other circumstances that indicate that the defendant received the nolle in exchange for providing something of benefit to the state or victim").[7] Bilateral agreements in which the defendant provides a benefit to the state or the victim other than a guilty plea to a charge are typically treated as the functional equivalent to a plea agreement, in that subsequent prosecution is barred as long as the defendant has performed his obligation. See *People* v. *Reagan*, supra, 309 (nolle agreement was "a pledge of public faith which became binding when the [n]olle prosequi order was approved by the trial judge"); see also *Bowers* v. *State*, 500 N.E.2d 203, 204 (Ind. 1986) (enforcing agreement not to prosecute in exchange for defendant's provision of information sufficient to obtain search warrant); *State* v. *Franklin*, 147 So. 3d 231, 238 (La. App. 2014) (enforcing agreement not to prosecute conditioned on defendant's successful completion of pretrial diversion program), cert. denied, 159 So. 3d 460 (La. 2015); *Jackson* v. *State*, 358 Md. 259, 262, 277–78, 747 A.2d 1199 (2000) (enforcing agreement in which defendant waived speedy trial rights in exchange for state's promise to dismiss charges if DNA analysis of certain evidence came back negative).

The question in the present case, therefore, is whether the defendant's donation was made in exchange for all four nolles (and thus constituted a global nolle agreement) or only for the nolle in the drug case. If the latter, there would be no bar to prosecution on the present charges.

In resolving this question, we apply principles that also govern the interpretation of plea agreements. It is well settled that "[p]rinciples of contract law and special due process concerns for fairness govern our interpretation of plea agreements." (Internal quotation marks omitted.) *State* v. *Rivers*, 283 Conn. 713, 724, 931 A.2d 185 (2007); see also *State* v. *Lopez*, 77 Conn. App. 67, 77, 822 A.2d 948 (2003) ("a plea agreement is akin to a contract and . . . well established principles of contract law can provide guidance in the interpretation of a plea agreement"), aff'd, 269 Conn. 799, 850 A.2d 143 (2004); *State* v. *Franklin*, supra, 147 So. 3d 241 (drawing analogy to principles of commercial contracts in interpreting agreement not to prosecute conditioned

on defendant's successful completion of pretrial diversion program).

As has previously been explained in the context of plea agreements, "[t]he primary goal of contract interpretation is to effectuate the intent of the parties . . . ." (Internal quotation marks omitted.) *State* v. *Rosado*, 92 Conn. App. 823, 827, 887 A.2d 917 (2006). In ascertaining that intent, we employ an objective standard and look to what the parties reasonably understood to be the terms of the plea agreement on the basis of their words and conduct, and in light of the circumstances surrounding the making of the agreement and the purposes they sought to accomplish. See *United States* v. *Alexander*, 736 F. Supp. 1236, 1239 (N.D.N.Y. 1989), aff'd, 901 F.2d 272 (2d Cir. 1990); accord *Paradiso* v. *United States*, 689 F.2d 28, 31 (2d Cir. 1982), cert. denied, 459 U.S. 1116, 103 S. Ct. 752, 74 L. Ed. 2d 970 (1983); *State* v. *Nelson*, 23 Conn. App. 215, 219–20, 579 A.2d 1104, cert. denied, 216 Conn. 826, 582 A.2d 205 (1990), cert. denied, 499 U.S. 922, 111 S. Ct. 1315, 113 L. Ed. 2d 248 (1991). An unambiguous agreement is presumptively an accurate reflection of the parties' intent. Thus, "[when] the language is unambiguous, we must give the contract effect according to its terms." (Internal quotation marks omitted.) *State* v. *Rivers*, supra, 283 Conn. 725.

"[When] the language is ambiguous, however, we must construe those ambiguities against the drafter [namely, the state]."[8] (Internal quotation marks omitted.) Id.; accord *State* v. *Nelson*, supra, 23 Conn. App. 219. The reason for this rule of construction, applied by a majority of the federal Circuit Courts of Appeal; *State* v. *Rivers*, supra, 283 Conn. 726; is that the state "generally holds substantially superior bargaining power over the other party to the agreement, the criminal defendant." Id., 725; see, e.g., *United States* v. *Palladino*, 347 F.3d 29, 33 (2d Cir. 2003) ("[b]ecause the government ordinarily has certain awesome advantages in bargaining power, any ambiguities in the agreement must be resolved in favor of the defendant" [internal quotation marks omitted]). These same principles apply to oral plea agreements. See *State* v. *Obas*, 320 Conn. 426, 442–43, 130 A.3d 252 (2016); *State* v. *Rosado*, supra, 92 Conn. App. 827–28.

It is well settled that the threshold determination as to whether a plea agreement is ambiguous as to the parties' intent is a question of law subject to plenary review. See, e.g., *State* v. *Rivers*, supra, 283 Conn. 725. If the reviewing court deems the agreement ambiguous and extrinsic evidence has been offered to dispel that ambiguity, such as testimony regarding the facts surrounding the making of the agreement, then intent is a question of fact for the trial court, reversible only if clearly erroneous. See, e.g., *Orcutt* v. *Commissioner of Correction*, 284 Conn. 724, 741–43, 937 A.2d 656 (2007); *Martinez* v. *Commissioner of Correction*, 105 Conn.

App. 65, 73, 936 A.2d 665 (2007), cert. denied, 285 Conn. 917, 943 A.2d 475 (2008). If, however, the agreement is ambiguous and no extrinsic evidence has been offered, resolution of the dispute as to the parties' intent necessarily hinges on what inferences can be drawn solely from the four corners of the agreement. Under such circumstances, the intention of the parties presents a question of law over which we exercise plenary review. See *State* v. *Rivers*, supra, 723–24, 725 n.11 (noting that court would apply de novo review and that no extrinsic evidence was offered regarding formation of contract); see also *Bristol* v. *Ocean State Job Lot Stores of Connecticut, Inc.*, 284 Conn. 1, 7–8, 931 A.2d 837 (2007) ("In the present case, even though there is a purported ambiguity in the lease agreement, no extrinsic evidence was offered at trial to establish the intent of the parties. Therefore, the trial court's determination of the parties' intent was based solely on the language of the lease agreement and did not involve the resolution of any evidentiary issues of credibility. Accordingly, our review of the trial court's interpretation of the lease agreement involves a question of law over which our review is plenary."); *Gateway Co.* v. *DiNoia*, 232 Conn. 223, 230, 654 A.2d 342 (1995) ("because the trial court relied solely upon the written agreements in ascertaining the intent of the parties, the legal inferences properly to be drawn from the documents are questions of law, rather than fact"). In the absence of extrinsic evidence, determining the intent of the parties does not require resolution of disputed facts or credibility assessments.[9] See *State* v. *Lewis*, 273 Conn. 509, 516–17, 871 A.2d 986 (2005) ("[a]lthough we generally review a trial court's factual findings under the 'clearly erroneous' standard, when a trial court makes a decision based on pleadings and other documents, rather than on the live testimony of witnesses, we review its conclusions as questions of law"); *Morton Buildings, Inc.* v. *Bannon*, 222 Conn. 49, 53–54, 607 A.2d 424 (1992) ("In this case, the trial court's determinations were based on a record that consisted solely of a stipulation of facts, written briefs, and oral arguments by counsel. The trial court had no occasion to evaluate the credibility of witnesses or to assess the intent of the parties in light of additional evidence first presented at trial. The record before the trial court was, therefore, identical with the record before this court. In these circumstances, the legal inferences properly to be drawn from the parties' definitive stipulation of facts raises questions of law rather than of fact.").

In the present case, the sole evidence before the trial court in ruling on the motion to dismiss was the transcript memorializing the nolle agreement. Accordingly, we exercise plenary review in ascertaining the parties' intent.

Having articulated the proper standard of review and relevant guiding principles, we turn to the statements of

counsel contained in the transcript to ascertain whether they reflect a clear intent consistent with the state's interpretation. We begin with the prosecutor's statements relating to the nolles. As we previously noted, the prosecutor addressed each of the four cases in turn, articulating separate reasons for entering each nolle. The prosecutor then entered a nolle in each case, which Judge Kahn accepted. The prosecutor first discussed the motor vehicle case, followed by the breach of the peace case, the burglary/larceny case, and finally the drug case. After providing reasons for entering a nolle on the drug case, but before entering the nolle, the prosecutor made the following critical statement: "So what we had here was a proposed disposition to get rid of all of these files with a plea of drug paraphernalia and a fine of $300. That didn't work out today because we were unable to actually tap into Judge Strackbein. So I took the bull by the horns and asked [the defendant] to make a donation of $271 to the victim's fund. . . . In light of that, what we do each and every day over in [another geographical area] is to nolle this case, as well. So, now [the defendant's] matters are all resolved . . . ."

The meaning or scope of an agreement may be deemed ambiguous if it is susceptible to more than one reasonable interpretation. See *State* v. *Obas*, supra, 320 Conn. 444; *State* v. *Rosado*, supra, 92 Conn. App. 829. We conclude that the prosecutor's statements are susceptible to interpretations that support both parties' positions.

On the one hand, there is support for the state's interpretation. The prosecutor commenced his discussion of the drug case after entering nolles in the other three cases, each supported by independent reasons. The prosecutor discussed the defendant's donation to the victim's fund only in the course of addressing that case, indicating that, "[i]in light of that [donation]," he would "nolle this case, as well." The fact that the prosecutor's "took the bull by the horns" comment was made before he entered the nolle in the drug case lends support to the state's position, such that it could simply mean that, when Judge Strackbein became unavailable to accept the original plea agreement, the prosecutor decided to exercise his discretion to enter unilateral nolles on three cases and effectuate an agreement only on the drug case.

On the other hand, there is ample evidence in the transcript supporting the defendant's view. The prosecutor made no remark at the outset of the hearing to indicate that one of the four cases was being treated differently, nor did he preface the discussion of the drug case with any such comment. There were several indications, however, of like treatment of the four cases. The prosecutor entered identical dispositions in every case—a nolle. The prosecutor articulated reasons in

support of the nolles in every case, including the drug case. The reasons stated for the nolle in the drug case—problems in proof and lack of interest in pressing the matters given the circumstances attendant to the case—did not suggest a basis for differential treatment as they were not materially different from those offered in the other cases.

We also observe that, although the discussion of the defendant's donation to the victim's fund was temporally connected to the drug case, that consideration bore no logical connection to the drug case. The reasons for entering the nolle on the drug case were wholly unrelated to victim compensation. Indeed, a donation to the victim's fund bore a logical connection to the breach of the peace case and the burglary/larceny case, each of which involved identifiable victims, whereas there was no identifiable victim in the drug case other than arguably the defendant himself. The donation could have been reasonably understood as a logical alternative to restitution in those cases because the victim of the breach of the peace case was incarcerated and the victim of the burglary/larceny case could not be located.

In addition, certain comments by the prosecutor reasonably would have suggested to the defendant that the prosecutor would not recommence prosecution in the burglary/larceny case. The prosecutor's concluding statement before entering the nolle in the burglary/larceny case was "nobody here is out anything in this particular file." The prosecutor later noted for the record that the codefendant in the case was deceased. At the conclusion of the hearing, the prosecutor asked that any property relating to the case remaining in police custody be returned to its rightful owner. "The destruction of any evidence seized at a crime scene is consistent with a belief that no further charges will be brought and lends credence to the defendant's claim that [he] reasonably believed [his] plea ended [his] criminal liability."[10] *State* v. *Nelson*, supra, 23 Conn. App. 220.

Beyond this evidence suggesting like treatment of all of the cases, the prosecutor's expressed intention to take the "bull by the horns" due to Judge Strackbein's unavailability further suggests an intent to effectuate a global disposition substantially similar to the original plea agreement. The bull by the horns statement was made immediately after the prosecutor noted the terms of the parties' original agreement—to dispose of all of the defendant's cases in exchange for a guilty plea and a fine. The mere fact that the prosecutor thought it was necessary to state these terms for the record suggests that this original plea agreement had relevance to the agreement executed before Judge Kahn. It is also notable that the prosecutor did not state for the record any material change in circumstances relevant to the charges that would explain a change from the original

intent to effectuate a global disposition. Rather, the only changed circumstance identified was Judge Strackbein's unavailability. It is unreasonable to assume, without any explanation, that the mere happenstance of Judge Strackbein's unavailability would justify a substantive transformation of the parties' original global plea agreement to an agreement that conclusively disposed of only the drug case. Conversely, Judge Strackbein's unavailability provides a logical basis for going forward with a functionally similar agreement, minus the plea to the minor charge of possession of drug paraphernalia, because plea negotiations would have had to begin anew with Judge Kahn, who would thereafter have had to recuse herself from being the trial judge. Indeed, Judge Kahn repeatedly emphasized that she had assiduously avoided learning any substantive details of the plea agreement for that reason.

Finally, although the trial court gave dispositive weight to the fact that the prosecutor made no statement in the transcript that the donation was to be given in exchange for nolles in all four cases, in our view, it is far more significant that the prosecutor failed to make an unambiguous statement that the donation was consideration for a promise not to commence a future prosecution only on the drug case. If the prosecutor intended to enter unilateral nolles on three of the cases and effectuate a nolle agreement confined to only the drug case, then it was incumbent on the prosecutor to make that explicit on the record to avoid any ambiguity. See *State* v. *Nelson*, supra, 23 Conn. App. 219 ("[I]t was incumbent upon the state to enunciate what was and was not covered by the agreement lest the defendant be allowed to go to plea under the impression that the criminal portion of this tragic episode was closed. If the state was reserving a right to reprosecute in the event of the victim's death, it could have, and should have, said so."). It bears emphasizing that "the state, as the drafting party wielding disproportionate power, must memorialize any and all obligations for which it holds the defendant responsible, as well as all promises that it has made for the purpose of inducing the defendant to cooperate. The terms of the agreement should be stated clearly and unambiguously, so that the defendant, in assenting to waive certain fundamental rights, knows what is expected of him and what he can expect in return. Likewise, such clarity ensures that the state knows what it may demand of the defendant and what it is obligated to provide in exchange for the defendant's cooperation." (Internal quotation marks omitted.) *State* v. *Obas*, supra, 320 Conn. 443. The defendant was entitled to a clear understanding that, contrary to the original global plea agreement contemplated by the state and the defendant, the nolle agreement as articulated by the state before Judge Kahn had been substantively changed, in the view of the state, and left him vulnerable to potential prosecution in the other three cases. The

transcript of the hearing before Judge Kahn contains no language that would support any such notice to the defendant.

Nonetheless, the state points to Judge Kahn's statement during the plea hearing that she could not prevent the state from entering a nolle as evidence that she understood that the prosecutor was entering nolles in the cases independently and on his own initiative rather than as part of any agreement. The problem with this view is that it also undermines the state's argument that one of the nolles was part of an agreement, as Judge Kahn drew no distinction between the nolles on the four cases. Judge Kahn never addressed the defendant to ask him if he understood the terms of the agreement and did not make any statement on the record sanctioning the parties' agreement. Indeed, Judge Kahn's statement underscores the inherent ambiguity in the record as to the parties' intention. See *State v. Obas*, 147 Conn. App. 465, 481, 83 A.3d 674 (2014) (plea agreement "is a contract between the defendant and the state—not between the defendant, the state and the court"), aff'd, 320 Conn. 426, 130 A.3d 252 (2016). Moreover, because Judge Kahn emphasized that the prosecutor was "very careful not to mention what the offer was" to her in chambers because she was assigned to serve as the trial judge, she would have no idea to what extent the nolle agreement conformed to the original global plea agreement.[11]

The state also asserts that defense counsel's silence evidenced the defendant's acquiescence to the state's purported intent to enter unilateral nolles on the three cases other than the drug case. One, however, cannot object to what one does not know. The silence of defense counsel during the hearing can also be indicative of his interpretation of the state's comments as effectuating the parties' original intent to enter a disposition to dispose of all of the files in exchange for the defendant's donation. Regardless, "derelictions on the part of defense counsel that contribute to ambiguities and imprecisions in plea agreements may not be allowed to relieve the [g]overnment of its primary responsibility for insuring precision in the agreement." *United States* v. *Harvey*, 791 F.2d 294, 301 (4th Cir. 1986).

On the basis of the foregoing, we hold that the state must bear the burden for the ambiguity and lack of clarity in the nolle agreement as memorialized on the record by the prosecutor. We conclude that the defendant had a reasonable expectation that all the nolles were entered as a part of a global disposition akin to the original plea agreement. Our holding is consistent with the purposes underlying the application of this rule of construction—namely, to "encourage greater clarity and specificity in plea negotiations and plea agreements . . . to ensure fairness, stabilize and final-

ize the parties' expectations, and reduce the waste of judicial resources required to review challenges to guilty pleas that are encouraged when the record of the plea proceedings is ambiguous." *Innes* v. *Dalsheim*, 864 F.2d 974, 980 (2d Cir. 1988), cert. denied, 493 U.S. 809, 110 S. Ct. 50, 107 L. Ed. 2d 19 (1989).

Because the state breached the parties' nolle agreement by filing criminal charges related to the same conduct at issue in the burglary/larceny case, the Appellate Court properly reversed the judgment of conviction and remanded the case to the trial court with direction to order specific performance of the nolle agreement.

The judgment of the Appellate Court is affirmed.

In this opinion ROGERS, C. J., and PALMER and ROBINSON, Js., concurred.

[1] We granted the state's petition for certification to appeal, limited to the following issue: "Did the Appellate Court properly conclude that the trial court improperly denied the defendant's pretrial motion to dismiss?" *State* v. *Kallberg*, 319 Conn. 903, 122 A.3d 637 (2015).

[2] At various points in the record, there are references to four docket numbers, but five files or five cases. At one point, the state suggested that two files were combined under one docket number. For convenience, we refer to four cases in this opinion, consistent with the four nolles entered on the record.

[3] Although the Appellate Court indicated that Judge Kahn had been assigned as the trial judge in the drug case; see *State* v. *Kallberg*, supra, 157 Conn. App. 723; Judge Kahn simply indicated that she "would have been the trial judge."

[4] The record is unclear why the state agreed to accept $271 instead of the original, agreed upon $300 of consideration.

[5] In its brief, the state also cited a portion of the colloquy in which the prosecutor asserted: "[H]ad Judge Strackbein been here, I would have explained to her that her prior pretrial where she acknowledged Judge Brunetti's offer of one year suspended after [sixty] days on the larceny four. Perhaps the drug case changed significantly when [the] codefendant died and [the] victim was unavailable." The state asserts that these statements suggest that the prosecutor's "present inability to pursue prosecution of the larceny may have left him reluctant to concede too much in the stronger drug case." It is unclear to us what these statements mean, let alone their significance to the issue in the present case. Indeed, neither the trial court nor the Appellate Court relied on these statements in making their determinations.

[6] General Statutes § 54-56b provides: "A nolle prosequi may not be entered as to any count in a complaint or information if the accused objects to the nolle prosequi and demands either a trial or dismissal, except with respect to prosecutions in which a nolle prosequi is entered upon a representation to the court by the prosecuting official that a material witness has died, disappeared or become disabled or that material evidence has disappeared or has been destroyed and that a further investigation is therefore necessary." Practice Book § 39-30 provides equivalent terms. Thus, a defendant may preclude the entry of a nolle by objection if the prosecutor cannot establish one of the aforementioned reasons for entry of the nolle.

[7] In the context of malicious prosecution claims, which require, among other things, that the plaintiff prove that the prior criminal action was terminated in his or her favor, courts have recognized that a unilateral nolle is "really just an abandonment of prosecution that is not conditioned on the defendant 'giving up' anything," which would be a favorable disposition. By contrast, a bargained for nolle, where the defendant provides consideration for something of benefit to the state or the victim, would not constitute a favorable disposition and thus precludes a malicious prosecution claim. *Lupinacci* v. *Pizighelli*, 588 F. Supp. 2d 242, 249 (D. Conn. 2008); see also *DeLaurentis* v. *New Haven*, 220 Conn. 225, 251, 597 A.2d 807 (1991).

[8] Some courts have made clear that this rule of construction applies only after resort to facts and extrinsic evidence fails to resolve the ambiguity as to the parties' intent. See, e.g., *United States* v. *Clark*, 218 F.3d 1092, 1095

(9th Cir.) (when plea agreement contains ambiguities, court will first look to facts and extrinsic evidence to determine what parties reasonably understood to be terms of agreement and, if ambiguity remains, "the government ordinarily must bear responsibility for any lack of clarity . . . [because] [c]onstruing ambiguities in favor of the defendant makes sense in light of the parties' respective bargaining power and expertise" [citations omitted; internal quotation marks omitted]), cert. denied, 531 U.S. 1057, 121 S. Ct. 668, 148 L. Ed. 2d 569 (2000). We did not reach this question in *State* v. *Rivers*, supra, 283 Conn. 713, because, like the present case, no extrinsic evidence was presented to the court.

[9] We have continued, however, to draw a distinction between cases in which the sole evidence is documentary evidence in the nature of a contract and those in which transcripts reflect testimonial evidence that still is subject to a credibility assessment. See, e.g., *State* v. *Lawrence*, 282 Conn. 141, 157, 920 A.2d 236 (2007) ("it would be improper for this court to supplant its credibility determinations for those of the fact finder, regardless of whether the fact finder relied on the cold printed record to make those determinations"); *Besade* v. *Interstate Security Services*, 212 Conn. 441, 447–49, 562 A.2d 1086 (1989) (rejecting claim that this court need not defer to factual findings because evidence largely was documentary and, therefore, findings were not based on personal appraisal of witness' demeanor).

[10] The state correctly points to certain countervailing facts. It contends that photographs taken of the property would be admissible as secondary evidence in any subsequent prosecution. See General Statutes § 54-36a (b) (2). There was no indication on the record, however, that the state informed the defendant that photographs of the evidence had been taken or that they were being preserved for this purpose. The state points to the fact that the prosecutor stated that the burglary/larceny case was "unprovable" "as it stands today" because the codefendant was deceased and the victim could not be located. The state overlooks the facts that the death of the codefendant was not a fact that would change so as to make the case provable in the future and that the prosecutor added this reason after it entered the nolle in the case and only after Judge Kahn prompted the remark. At best, the state's arguments demonstrate why this aspect of the transcript is also ambiguous.

[11] To the extent the state relies on Judge Kahn's warning to the defendant about potential prosecution in the event of his continued substance abuse as evidence that the state was leaving open the possibility of prosecution even in the drug case, that argument is devoid of merit. Judge Kahn's comments plainly were directed at potential liability for the defendant's *future* conduct, not the possibility of prosecution for the past conduct alleged in the nolled drug case.